DRURY DEVELOPMENT CORPORATION, a Missouri Corporation, Appellant,

v.

The STATE HIGHWAY COMMISSION of Missouri, Respondent.

No. WD 32793.

Missouri Court of Appeals, Western District.

July 20, 1982.

William Darmstaedter, II, Cape Girardeau, for appellant.

Bruce A. Ring, Chief Counsel, Jefferson City, Curtis F. Thompson, Asst. Counsel, for Missouri Highway and Transp. Com'n.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

Drury Development Corporation appeals from orders of the State Highway Commission of Missouri (now the Missouri Highway and Transportation Commission) directing removal of three outdoor advertising signs. The Commission found the signs subject to removal without compensation because erected and maintained without permits as required by §§ 226.500 to 226.600, RSMo 1978.[1] The circuit court affirmed the decisions of the Commission.

The outdoor advertising signs affected by the orders for removal in this case are distinguishable by the two points of error which appellant Drury Development Corporation presents. The first point concerns only sign 78–06–457. The second is applicable to three signs, that last mentioned and additional signs 75–06–388 and 77–10–183. These points will be taken in the order briefed by appellant.

As to sign 78–06–457, appellant made application in March 1978 for a permit to erect the sign. In June 1978, although no action had been taken by the Commission to issue the permit or deny the application, Drury proceeded to erect the sign. Thereafter, the notice to remove the sign was issued, the basis for the order being that the sign was erected without a permit and the sign was also in violation of § 226.-

1. All statutory references are to RSMo 1978.

540(3)(a) because it was within 500 feet of an existing sign.

In its point on appeal, Drury acknowledges the sign was erected without a permit. Drury contends, however, that the permit was improperly denied because the spacing violation was attributable to another illegal sign. The nearby sign, admittedly within 500 feet, was subject to a removal order, also because no permit had been obtained. The proprietor of that sign and Drury were in competition for the location in a contest over priority of applications.

Irrespective of whether the competing sign was or was not lawful, Drury fails to take account of § 226.580.1(2) which prohibits maintenance of signs for which no permit has been obtained. Drury takes the position that it is entitled to resort to self-help if, without proper cause, the Commission neglects or refuses to grant a sign permit on application. The remedy to be pursued by a rejected applicant for a sign permit is not to proceed to erect the sign, as Drury did here, but to seek relief by administrative review, § 536.063, or by injunction or original writ, § 536.150. If, as here, it is conceded the offending sign was erected without a permit, the order for removal must be affirmed, whatever the reason may have been for the failure or refusal to grant the permit.

As was suggested by the Commission's order, the means of redress to Drury are to comply with removal and reapply for a permit. As between Drury and the owner of the other sign ordered removed because also erected without a permit, the Commission has indicated the first application for permit properly filed will be accepted.

The second and final point Drury presents is applicable to the removal order directed to the sign considered in the first point and to two additional signs erected after March 30, 1972 and maintained without permits. The point is stated as follows:

THE TRIAL COURT ERRED IN NOT ORDERING THE RESPONDENT TO

IMPLEMENT, OPERATE AND MAINTAIN AN ALTERNATIVE SIGN PROGRAM WITHIN THE RESPONDENT'S RIGHT-OF-WAY BECAUSE SAID ALTERNATIVE SIGNING PROGRAM IS REQUIRED BY LAW IN THAT THE RESPONDENT'S FAILURE TO DO SO IN EFFECT PLACES A HARDSHIP ON THE APPELLANT AND IGNORES THE STATUTORY REQUIREMENTS PLACED UPON THE RESPONDENT BY THE MISSOURI LEGISLATURE.

From the brief, it appears that the "alternate sign program" to which Drury refers and which it is claimed the Commission has failed to implement is § 226.535 providing for travel information signs on the highway right-of-way. The section reads as follows:

Signs, displays, and devices giving specific information of interest to the traveling public shall be erected and maintained within the right-of-way in such areas, in an appropriate distance from interchanges on the interstate system as shall conform with the rules and regulations promulgated by the highway department. Such rules shall be consistent with national standards promulgated from time to time by the appropriate authority of the federal government, pursuant to Title 23, section 131, paragraph f, of the United States Code.

Drury makes the bald assertion, without citation of any authority, "that no signs whatsoever can be removed until the Respondent has embarked on a program to establish logo-signing on the right-of-way."

The statutes do not condition the authority of the Commission to order removal of unlawful signs on implementation of an informational sign program for the traveling public on the right-of-way. Indeed, it is difficult to perceive what relationship exists at all between informational signs on the right-of-way and signs beyond the right-of-way advertising private businesses. In any event, if the owners of billboards, such as Drury, believe the Commission has failed to perform a statutory function, the remedy is by mandamus or injunction, not by erecting unlawful signs.

The signs in question were all erected after March 30, 1972 and are being maintained without permits. Drury does not dispute these facts. On these grounds alone, the removal orders must be affirmed.

The judgments of the circuit court in cases 78–06–457, 75–06–388 and 77–10–183 are affirmed.

KENNEDY, J. concurs.

MANFORD, J., dissents in separate dissenting opinion.

MANFORD, Judge, dissenting.

I must dissent, for in my view the issues herein are not readily subject to the summary disposition proclaimed in the majority opinion. To be sure, the majority opinion provides a means for deciding this case and it is within the parameters of the judicial process. It appears, however, our courts have recently, as a convenience, seized upon the simplest manner in which to conclude appeals from various state agencies with scant concern or regard as to how routine judicial approval fails to consider important substantive aspects of basic social and economic problems of our people and our state.

In almost cursory manner, the majority disposes of this case in declaring, "The Commission found the signs subject to removal without compensation because erected and maintained without permit as required by § 226.500 to § 226.600 RSMo 1978." If the role of our courts is to merely accept the decision of any state agency based upon some unspecified statutory reference, without full consideration of the facts and circumstances which led to that decision, then there appears little merit in the effort and expense made by appellant to obtain judicial review of state agency decisions.

In the instant case, the majority opinion completely ignores a basic substantive issue that affects the economic well being of our state, to wit, tourism. The record of the instant case is replete with that very issue and in order that such a basic factor be considered, this writer knows of no other

way then to outline the essential factual references along with the reasons why the decision of respondent is erroneous and should be reversed.

Two separate actions involving three signs were filed and these actions were consolidated by order of the circuit court. For purposes of clarity, this dissent considers each sign separately, referencing each by the hearing number previously assigned to each.

### Number 75–06–388

This sign is located in south St. Louis County along I–55 at a point 2.6 miles north of the intersection of I–55 and Missouri Route 141. The sign is on the east side of I–55 within 600 feet of the right of way line of I–55 and is visible from I–55. The only evidence of the installation date was the testimony of the local permit inspector who testified that he became aware of the sign in early 1973. The sign advertises a local motel. It was located in an area zoned "non-urban" by the St. Louis County zoning authority. The zoning designation became effective April 27, 1978, some four years subsequent to the date of its installation.

The notice to remove served upon appellant did not include or indicate any other remedial action. At the hearing, the inspector testified that the only remedy (presumably his personal opinion) was removal.

At the close of the hearing, respondent entered findings of fact and conclusions of law, the applicable portion of which reads as follows:

(Findings of Fact)

### HEARING NO. 75–06–388

This hearing involves an outdoor advertising structure owned and maintained by applicant adjacent to Interstate Route 55 in St. Louis County approximately 2.67 miles north of the intersection of Interstate Route 55 and Route 141, identified as Sign No. RXI–0550–095–N–150–008A.

This sign is visible from the main traveled way and is located within 660 feet of the right-of-way of Interstate Route 55 which is a part of the Interstate highway system.

The sign was erected in 1973.

The sign is located in an area which has been zoned for non-urban use by the county of St. Louis and it is maintained without a permit issued by the county or the Department.

The Department's district engineer issued a notice to remove outdoor advertising for the sign which was received by the applicant.

(Conclusions of Law)

### HEARING NOS. 77–10–183, 75–10–145, AND 75–06–388

The Commission has jurisdiction under Section 226.580 RSMo.

The signs are adjacent to and within 660 feet of the nearest edge of the right-of-way and visible from the main traveled way of Interstate Route 55, and, thus, subject to the requirements of Sections 226.500 to 226.600 RSMo.

Signs erected and maintained on or after March 30, 1972, within 660 feet of the nearest edge of the right-of-way of a primary or interstate highway are regulated and limited to: (1) Directional and other official signs and notices; (2) On-premise signs; (3) Signs located in areas zoned commercial, industrial or the like; (4) Signs located within 600 feet of an unzoned commercial or industrial establishment when located in a county without zoning regulations; and (5) Nonconforming signs. Sections 226.520, 226.540 and 226.550 RSMo. and 7 CSR 10–6.-060(2).

Regarding Hearing No. 77–10–183, Section 226.540(3)(a)a RSMo. prohibits signs adjacent to interstate highways outside incorporated municipalities from being erected within 500 feet of an existing sign on the same side of the highway. We conclude the sign violates that prohibition.

Regarding Hearing Nos. 77–10–183, 75–10–145 and 75–06–388, Section 226.-580.1(1) RSMo and 7 CSR 10–6.080(2)(A) prohibit signs erected after March 30, 1972, contrary to the provisions of Sec-

tions 226.500 to 226.600 RSMo. We conclude the signs violate the location restrictions of Sections 226.520 and 226.540 RSMo, and, thus, are subject to removal as unlawful signs.

Regarding Hearing Nos. 77–10–183 and 75–06–388, Section 226.580.1(2) RSMo and 7 CSR 10–6.080(2)(B) prohibit signs for which a permit is not obtained as prescribed in Sections 226.500 to 226.600 RSMo. We conclude the signs violate that prohibition and, thus, are subject to removal as unlawful signs.

The phrase 'tourist oriented type business' is not defined in Sections 226.500 to 226.600 RSMo. However, the Commission must construe Section 226.580.5 RSMo to give it effect, if possible. Thus, the Commission defined signs advertising tourist oriented type businesses in 7 CSR 10–6.080(4). We conclude the signs do advertise tourist oriented type businesses. Further, the Commission construes the limitation of Section 226.580.5 RSMo to apply only to signs erected before March 30, 1972; otherwise, Sections 226.500 to 226.600 RSMo are rendered ineffectual in controlling the erection of unlawful signs after March 30, 1972, which may by chance or by design display a message advertising a tourist oriented type business. As the subject signs were erected after March 30, 1972, we conclude the limitation of Section 226.580.5 RSMo is not applicable to them.

Applicant's contention, developed in its brief, that signs advertising tourist oriented businesses must not be removed until such time as the Commission provides an alternate sign program under Section 226.535 RSMo is without merit for the reason that implementation of such a program is not relevant to the Commission's final decision in a Section 226.580 RSMo hearing.

The notices to remove outdoor advertising for the signs (Commission Ex. 1, 10, and 17) comply with Section 226.580.3 RSMo and are sufficient as a matter of law because they specified the basis of the sign's unlawfulness and advised the applicant what was required to correct the unlawfulness.

The Department's district engineer properly issued the notices to remove outdoor advertising. Respondent then entered its order of removal.

Relative to respondent's findings of fact, it appears respondent found that the sign existed and was being maintained without a permit from either the county or respondent. In its conclusions of law, respondent found that the sign violated the provisions of § 226.520 and § 226.540, RSMo 1978. Respondent concludes that the violations rested upon the failure to have a permit.

This case involves three signs, *all of which provide tourist oriented business information.* The evidence supports such a conclusion and respondent declared the signs as such in its order. However, respondent construed subsection (5) of § 226.-580, which is a limitation upon respondent's removal authority, to apply only to signs erected after March 30, 1972. The reasoning applied by respondent, in its own judgment, was, "the Commission construes the limitation of Section 226.580(5) RSMo to apply only to signs erected before March 30, 1972; otherwise, Sections 226.500 to 226.600 RSMo are rendered ineffectual in controlling the erection of unlawful signs after March 30, 1972, which may by chance or by design display a message advertising a tourist oriented type business." Respondent supports its conclusion by reference to 7 CSR 10–6.080(4), which reads:

(4) Criteria for Determination of Signs Advertising Tourist Oriented Type Business. Signs advertising tourist oriented type business mean outdoor advertising as determined by the chief engineer displaying directional information about activities and goods limited to gasoline and associated vehicle services such as fuel, oil, water, lubrication, tires and repairs; food; lodging; camping, natively produced handicraft goods; amusement facilities, public places owned or operated by federal, state or local governments or their agencies; publicly or privately owned natural phenomena, historic, cultural, scientific, educational, and religious

sites; or areas of natural scenic beauty or naturally suited for outdoor recreation. Directional information consists of mileage, route numbers, exit numbers or the like useful to the traveler in locating such activities and goods. *The term 'signs advertising tourist oriented type business,' as used in section 226.580.5 RSMo, applies only to signs erected before March 30, 1972.* (emphasis added)

The record contains no evidence to support respondent's conclusion; nor is there statutory authority for the limitation imposed by either respondent's conclusion of law or 7 CSR 10–6.080(4). Respondent's conclusion of law should thus be ruled erroneous and void. As to the portion of 7 CSR 10–6.080(4) which reads, "The term 'signs advertising tourist oriented type business' as used in section 226.580(5) RSMo, applies only to signs erected before March 30, 1972," the same should be declared void as having been adopted without statutory authority. In fact, such limitation runs directly contrary to the public policy of the Missouri General Assembly as regards tourism in Missouri and as expressed within § 226.500/226.580, RSMo 1978. A regulation may not conflict with the statutory law of our state, and if it is found to do so, the regulation fails. *Johnson v. Labor & Industrial Relations Com'n.*, 591 S.W.2d 241 (Mo. App.1979). It is evident that the conclusions of law and the enactment of 7 CSR 10–6.080(4) were promulgated as a convenience for respondent.

Throughout §§ 226.500/226.580, the General Assembly has expressed its public policy on tourism. Tourism is of vital economic importance to our state. If the General Assembly had intended to limit the exception of subsection (5) within § 226.580 to signs erected prior to March 30, 1972, it could have, and in the opinion of this writer, would have written into that section such limitation. In addition, there is nothing in the record which shows that the sign in question is otherwise prohibited by Title 23 United States Code § 131 or by rules promulgated by the Secretary of Transportation as prescribed within § 226.520(5). This court should conclude that § 226.520(5)

is applicable to the disputed sign and that respondent erred in its conclusions of law and by the adoption and application of 7 CSR 10–6.080(4). The interpretation of the law by a state agency is a matter of independent judgment of this court. *Daily Record Co. v. James*, 629 S.W.2d 348 (Mo. banc 1982).

It should be noted that respondent has not undertaken its responsibility mandated by the General Assembly to specify areas of high concentration of tourism in furtherance of the public policy toward tourism within § 226.520(5). This is a basic argument of appellant that the majority holds inapplicable and a position with which I cannot agree.

The Missouri General Assembly has declared a public policy concerning "tourist oriented business" signs in § 226.520(5). In summary, that section of our statute declares such outdoor advertising "shall only be allowed to the extent that such outdoor advertising is not prohibited by Title 23, United States Code, Section 131, ... The general assembly finds and declares it to be the policy of the state of Missouri that the tourism industry is of major and critical importance to the economic well-being of the state and that directional signs, displays and devices providing directional information about goods and services in the interest of the traveling public is essential ..." This section also compels respondent to determine those areas of high concentration of tourist oriented businesses. The evidence upon this record reveals that respondent has failed to comply with that mandate. There is no evidence to indicate whether the signs disputed herein are within such specified areas. If they are in such areas, the statute further limits respondent's authority to remove them by declaring:

[W]ithin such areas, no directional signs, displays and devices which are lawfully erected, which are maintained in good repair, which provide directional information about goods and services in the interest of the traveling public, and which

would otherwise be required to be removed because they are not allowed to be maintained under the provisions of sections 226.500 through 226.600 shall be required to be removed until such time as such removal has been finally ordered by the United States Secretary of Transportation.

There is no evidence upon this record to show whether these signs violate Title 23, United States Code, section 131, that these signs are not in a specified area, or any other factor excluding these signs, such as disrepair, etc., or that removal has been "*finally ordered by the United States Secretary of Transportation.*"

The real question herein is whether the sign in question was lawfully erected. Respondent contends that it was not because appellant failed to secure a permit.

Respondent erred when it entered its conclusions of law that § 226.580(5) applied only to signs erected after March 30, 1972. This section would apply upon a finding that a portion of 7 CSR 10–6.080(4) is invalid. Further, this court should find that this sign comes within the provisions of § 226.-520(5), subject to a determination of a permit for this sign.

Based upon the foregoing, we turn to the issue of whether this particular sign is unlawful because of appellant's failure to secure a permit. Respondent has continued to maintain the position that since the County of St. Louis has passed zoning prohibiting such advertising signs in areas zoned "non-urban" the sign is unlawful. It is respondent's position that appellant's failure to introduce evidence of the zoning at the time the sign was installed to show it was permissible to install the sign renders the current local zoning prohibition applicable. This court should not agree. The burden to show that the sign was unlawful was at all times upon respondent. The only evidence on the zoning question was the introduction of zoning documents with an effective date of April 27, 1978. Respondent failed to carry its burden of proof on the issue of the zoning prohibition. The prohibition initiated some four years after

the erection of the sign is not applicable to support respondent's order of removal under the rule of *Hoffmann v. Kinealy*, 389 S.W.2d 745 (Mo. banc 1965). The county zoning ordinance applied retrospectively cannot deprive appellant of a vested property interest. There is no evidence upon this record to show that appellant was not so possessed. This writer is not unmindful of other authority which has construed subsequently enacted zoning regulation as retrospectively applicable under the exercise of police power by local authority. See *University City v. Diveley Auto Body Company*, 417 S.W.2d 107 (Mo. banc 1967). There is no evidence upon this record to support the application of *University City* or other authority where local police power has authorized the use and application of later enacted zoning restrictions.

Although the principal question remains the failure of a permit, there is an ancillary question concerning whether respondent, in its notice to remove, should have provided appellant the opportunity of remedial alternatives. From the record, it is clear that respondent had made a predisposition regarding this sign. The notice provided no remedial alternative, and respondent's witness (permit inspector) testified that the only remedy was removal.

It can be observed from the ruling that this court should make regarding respondent's erroneous conclusions of law and the inapplicability of the local zoning prohibition, that the only remaining issue is the failure to secure a permit. This question has been laid to rest by this court when it held: "The terms of the Billboards Law provide clearly that where the unlawfulness of an outdoor advertisement sign consists solely in the failure of a permit, the owner must be given opportunity to correct that defect before the sign may be removed." *State Etc. v. State Highway Commission*, 624 S.W.2d 453, 464 (Mo.App.1981).

Appellant was never afforded an opportunity to correct the defect of failing to have a permit. This is not to say that appellant is assured a permit, but only that respondent is required to provide such op-

portunity. The majority opinion has chosen to avoid the application of a prior rule initiated by this same court, *State Etc.*, supra. As regards sign 75–06–388 and that portion of the circuit court's judgment applicable thereto which affirmed respondent's order to remove said sign, that portion of the judgment should be reversed and this cause remanded to the circuit court, and said court should be directed to in turn order respondent to vacate its order of removal of sign 75–06–388 and to proceed as necessary in regard to the question of a permit relative to said sign.

### Number 77–10–183

This sign is located one-half mile north of I-55 and Route EE interchange in New Madrid County. This sign is within 660 feet of the right of way of I-55. It was erected between March 13 and 19, 1977 and was added to the backside of another (pre-existing) outdoor sign. The pre-existing sign was erected in 1967. Both signs advertise motel accommodations. Under respondent's order, it was designated a "tourist oriented business" sign. The conclusion and result, expressed in this dissent, relative to sign 75–06–388 above regarding tourism and § 226.520(5) apply equally to this sign.

Respondent's order held that this sign was unlawful as having been erected and maintained without a permit. The only remedial action supported by respondent was removal. Concerning that portion of respondent's order regarding the permit, the result reached in the case of sign 75–06–388, under *State Etc.*, is applicable to sign 77–10–183. This is not a conclusion that appellant is entitled to the permit, but that respondent is required to afford such opportunity to secure a permit. In addition to the issue of the permit, respondent's order declared the sign unlawful as being in violation of § 226.540(3)(a), which prohibits the erection of a sign within 500 feet of an existing sign on the same side of the highway. This sign was placed on the reverse side of the pre-existing sign. This ruling also requires consideration of the statutory reference by respondent [§ 226.540(3)(a) ]

and an additional section, § 226.540(2)(b), the pertinent portion of which reads, "and signs may be placed back to back, double faced, or in V-type construction with not more than two displays to each facing, but such sign structure shall be considered as one sign." The evidence before this court describes this sign as that authorized within § 226.540(2)(b). Respondent's witness (permit inspector), upon cross-examination, testified as follows:

"Q. You say there is a spacing violation, is that correct?

A. Right.

Q. And is that spacing violation with the Ramada Inn sign here?

A. Right.

Q. That's a V-construction, is it not?

A. Correct.

Q. Now, V-construction does not necessarily imply spacing violation?

A. Well, not necessarily implies, but when a new sign goes up, then it is in violation of spacing because it has to be treated independently and differently.

Q. These are tied together, are they not?

A. They are.

Q. So it is actually one sign?

A. To be treated as one sign at this time except violation of the Drury Inn sign."

The evidence reveals that this sign comes within § 226.540(2)(b) and not § 226.-540(3)(a)a, as concluded by respondent and the majority opinion. Respondent applied the incorrect and inapplicable sub-section of § 226.540 and the application was erroneous. The majority opinion, in support of that conclusion, is equally in error. Such determination is a matter of independent determination for this court. *Daily Record*, supra. Upon this determination, there remains only the issue of the failure to secure a permit. That issue is resolved above in conformity to the rule announced in *State Etc.*, supra.

As regards sign 77–10–183, that portion of the circuit court judgment applicable

thereto, which affirmed respondent's order to remove sign 77–10–183, should be reversed and the cause remanded to the circuit court, and said court should be directed, in turn, to order respondent to vacate its order of removal of sign 77–10–183 and to proceed as necessary in regard to the question of a permit relative to said sign.

*Number 78–06–457*

This sign is located on the south side of I–44, 2.04 miles east of the interchange of I–44 and Route 100 in Franklin County. It was erected in an unincorporated area in June, 1978. This sign, like signs 75–06–388 and 77–10–183, was designated a "tourist oriented business" sign by respondent's order and the discussion and ruling announced above regarding the other two signs are applicable to 78–06–457. On the matter of a permit, this sign presents a different situation, perhaps best described by a brief outline of events relating to it:

"(a) On March 9, 1978, appellant applied for a permit for said sign.

(b) On April 10, 1978, appellant's counsel corresponded with respondent, requesting the processing of the application.

(c) On April 19, 1978, respondent sent a notice to remove to the owner of the Iron Gate Antique Store in Pacific, Missouri.

(d) An interchange of correspondence between appellant and respondent regarding advice as to how appellant should proceed in regard to the sign took place.

(e) On June 20, 1978, a respondent conducted a hearing on the Notice to Remove the Iron Gate Sign.

(f) On June 22, 1978, there was further correspondence regarding how appellant should proceed.

(g) On June 26, 1978, appellant was sent notice to remove its sign."

Respondent sent the notice to remove and predicated its order of removal upon a violation of § 226.540(3)(a)a, which prohibits the erection of any sign within 500 feet of an *existing sign.* Respondent has interpreted the word or term *existing* (sign) to include both *legal* and *nonlegal* signs for the purpose and intent of § 226.540(3)(a)a.

The location selected for this disputed sign was a lawful location, except for the interpretation given the term "existing" by respondent. The local inspector for respondent disclosed to appellant that it was a lawful location. When this disclosure was made, appellant entered into a lease agreement with the landowner and applied for the permit. When the dispute arose and appellant's permit application was not processed, respondent took the position that the spacing prohibition within § 226.540(3)(a)a applied, whether the previous sign was a lawful sign or not. It is respondent's position that "said restriction does not [within § 226.540(3)(a)a] distinguish between legal, illegal or nonconforming signs. Therefore, signs may not be legally erected within 500 feet of another sign, irrespective of that sign's status."

Appellant argues, that the term "existing" (sign), within the section of the statute, means *lawfully existing sign.* This dissent must agree with appellant, for if this court adopted respondent's interpretation of the term of the statute, respondent would be legally authorized to make determinations of the "lawfulness" of signs wherein spacing prohibition was the issue upon and by use of unlawfully or illegally existing signs. Stated another way, if we follow respondent's interpretation of the statutory term, as the majority opinion does, we would acknowledge and permit the use of an unlawful or illegal sign for purposes of enforcing the billboard law. This very result is sanctioned judicially by the majority and is not a proper function of this court. Respondent erred in its interpretation of the term *existing sign* within § 226.-540(3)(a)a, and the same should be construed by this court to mean *lawfully existing sign.* For the majority to rule otherwise flies in the face of sound legal and moral principle. It is only in this way that the intent of the General Assembly can be properly expressed and the purpose of the

billboard law carried out. The result, contrary to respondent's interpretation, should be that *unlawful* or *illegal* signs shall not be counted for spacing purposes within the intent and meaning of § 226.540(3)(a)a. The unlawfulness or illegality of any sign is best determined by authority vested in respondent other than resort to a procedure that "lumps" together all signs, regardless of their legal status, for the purpose of counting signs for spacing regulation. By its order, respondent erroneously interpreted § 226.540(3)(a)a, and this court, under the authority of *Daily Record Co.*, should interpret said term to mean "lawfully existing sign".

As regards sign 78–06–457, that portion of the circuit court's judgment which affirmed respondent's order to remove said sign should be reversed and the cause remanded to the circuit court, and said court should be directed to order respondent to vacate its order of removal of sign 78–06–457 and to proceed as necessary in regard to the question of a permit relative to said sign in accordance with this opinion.